IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JEFFREY G. HEDGES, D.C.<br>170 S. Willow Brook Drive<br>Asheville, North Carolina 28806<br><br>Plaintiff<br><br>vs.<br><br>STEPHEN D. BITTINGER, ESQ.<br>24629 Detroit Road<br>Westlake, Ohio 44145<br><br>And<br><br>BITTINGER LAW, LLC aka<br>NEE BITTINGER, LLC<br>C/O STEPHEN D. BITTINGER<br>24629 Detroit Road<br>Westlake, Ohio 44145<br><br>Defendants | CASE NO:<br><br>JUDGE |

COMPLAINT FOR LEGAL MALPRACTICE
JURY DEMAND ENDORSED HEREON

Now comes Plaintiff, and for his cause of action against Defendants, alleges that:

## PARTIES

1. Plaintiff, Jeffrey G. Hedges, DC ("Hedges"), is a doctor of Chiropractic Medicine who resides and has his principal place of business in Asheville, North Carolina.

2. Defendant, Stephen D. Bittinger, Esq. ("Bittinger"), is an attorney who is licensed to practice Law in the State of Ohio and operates his law practice with a principle place of business at 24629 Detroit Road, Westlake, Ohio 44145.

3. Defendant, Bittinger Law, LLC, aka Nee Bittinger Law, LPA. ("NB"), is a Limited Liability Company in which Stephen D. Bittinger is believed to be a

principle/partner, and which has its principle place of business at 24629 Detroit Road, Westlake, Ohio 44145.

## JURISDICTION

4. Plaintiff brings his Complaint under Federal Diversity Jurisdiction 28 U.S.C. §1330, as the parties are completely diverse in citizenship and the value of the controversy exceeds $75,000.00

## FACTS

5. In January 2015, and for sometime prior thereto, Hedges, by and through his management company ADIO, operated a multi-disciplinary medical office in the State of North Carolina, Superior Healthcare Physical Medicine ("Superior").

6. Infinite Wellness ("Infinite"), an independent business and unrelated entity, was entering and performing all of Superior's Medicare and Major Medical Insurance billing services. As such, Hedges reasonably believed Infinite's billing practices were proper and in compliance with relevant Medicare and medical insurer requirements. Upon information and belief, Infinite is believed to be a current or former client of Defendants'.

7. After attending a seminar in early 2015, Hedges became concerned Infinite's billing practices with respect to Medicare billing rules may not have been accurate. To ensure that his practices were in full compliance with all Medicare billing requirements, as well as the requirements of private medical insurance companies, Hedges retained the services of Bittinger and NB on or about January 10, 2015. (*Exhibit "A"*).

8. The purpose and scope of Bittinger's and NB's representation was to ensure that Superior/Hedges' practice was in full compliance with all Federal Medicare billing requirements, as well as the requirements of private medical insurers. This was to be accomplished by first, auditing the bills, and second, if irregularities were discovered, recommending to Hedges curative procedures, and assisting with implementation of those procedures.

9. To that end, Bittinger and NB retained the services of Accucode Consulting, LLC., of Yalaha Florida ("Accucode"), to undertake an audit of several of Superior's patient files. Said audit was not completed until mid- May, 2015.

10. Accucode's audit revealed some billing practices which might not comply with Medicare and major medical insurance billing guidelines. Many of the

2

irregularities discovered in the audit involved "up-charging". Dr. Venus Pitts, MD ("Pitts"), was the licensed physician under whose name/license the multi-disciplinary clinic operated. Apparently, services were being billed to Medicare under Physician Pitts' reimbursement rate as "incident to" her medical care, as opposed to being properly billed at the lower "mid-level" rate. Hedges had not realized this was an incorrect practice until so advised by Accucode/Bittinger/NB, as Infinite had advised him this was the correct practice.

11. On approximately May 18, 2015, Bittinger and NB had a telephone conference with Hedges concerning the results of the audit. Bittinger and NB provided advice to Hedges as to the corrective measures to take as a result of the audit. The advice that Bittinger and NB provided was merely to change billing practices going forward. With respect to the past billing irregularities which were revealed by the audit, Bittinger and NB instructed Hedges to "do nothing further." Furthermore, Bittinger and NB did not recommend a complete audit to reveal the complete scope of the overbilling, as opposed to the small sample size audit which had been performed, nor did they mention it was advisable to contact Medicare and "self report" what the audit had found.

12. The only other legal advice that Bittinger and NB provided was to suggest purchasing "Audit" insurance, which Hedges did in fact purchase for his Asheville office and was in the process of purchasing for his Durham office.

13. Following Bittinger and NB's advice, Hedges assured himself that Infinite and Superior altered their billing practices going forward to reflect the changes required by the audit and Bittinger/NB's advice. Hedges confirmed these changes in an e-mail to Accucode on May 8, 2015, which was even prior to the May 18th telephone call with Bittinger/NB. Accordingly, Hedges believed that he had fully complied with all of Bittinger and NB's advice.

14. On or about December 1, 2015, Pitts informed Hedges that Medicare had come to her Asheville office for an audit, and that she was fearful of potential problems that could arise from the audit with other areas of her practice. Thinking Bittinger and NB had provided sound advice in the past, and that Bittinger and NB still represented him, Hedges referred Pitts to Bittinger and NB.

15. On or about December 23, 2015, as a result of Hedges' referral of Pitts to Bittinger, Pitts retained Bittinger and NB to defend against a Medicare audit. Bittinger and NB, now also representing Pitts, made a formal request to Hedges for Defense costs, which Hedges assumed would be covered by the Audit Insurance Hedges purchased as a result of Bittinger and NB's advice to purchase Audit Insurance.

3

SLATER & ZURZ LLP
ATTORNEYS & COUNSELORS AT LAW
ONE CASCADE PLAZA
SUITE 2210
AKRON, OHIO 44308-1135
TELEPHONE (330) 762-0700
FAX (330) 762-3923

16. At some point in time after June of 2016, Hedges learned, through a copy of a coverage opinion provided to him, that the Audit Insurance would provide no coverage to Pitts/Superior. Further, the coverage opinion revealed that Bittinger and NB alleged in a telephone call to the carrier on April 12, 2016, that: "…Dr. Hedges had been fraudulently billing services under your (Pitts') NPI for the past three years in order to obtain increased reimbursement from Medicare."

17. Accordingly, not only were Bittinger and NB making a false representation to the carrier that Hedges was "fraudulently billing services under your (Pitts') NPI for the past three years in order to obtain increased reimbursement from Medicare," Bittinger and NB were disclosing confidential information of Hedges' obtained in the course of Bittinger/NB/Hedges' attorney client relationship, and Bittinger and NB were taking a position contrary to their client Hedges' interest, thus creating for Bittinger and NB a conflict of interest between their representation of Hedges and of Pitts. This, after Hedges had referred Pitts to Bittinger/NB, and while Bittinger/NB were still sending their newsletters to Hedges.

18. In January, 2017, one of Hedges' colleagues was interviewed by the Office of the Inspector General concerning the excessive Medicare reimbursements first identified by Accucode's audits, and for which Bittinger and NB advised Hedges to "do nothing". This interview resulted in Hedges realizing that he might be responsible for past Medicare up-charges about which Bittinger and NB specifically advised him to "do nothing."

19. Hedges has already spent over $250,000.00 in defending these actions. Upon information and belief, Hedges believes that his civil liability to Medicare may reach $5,000,000.00, with criminal prosecution still possible.

20. Had Bittinger and NB advised Hedges at the time the Accucode audit revealed possible up charging errors, to self-report to Medicare, upon information and belief, Hedges believes he could have resolved the errors with Medicare for in the vicinity of $150,000.00, which he would have paid, which would have eliminated any further civil or criminal penalties.

## COUNT I.
### *Legal Malpractice*

21. Plaintiff incorporates all paragraphs of this Complaint as is fully set forth under this count and further alleges:

22. Hedges retained Defendants for legal representation and advice concerning

4

whether his practice was properly billing Medicare and other Medical insurance carriers in his company's multi-disciplinary practice.

23. Defendants' conducted an audit which revealed potential improper "up-charges" to Medicare.

24. Bittinger and NB's legal advice to Hedges was to merely correct his practices going forward, to "do nothing" about the past billing errors, nor to even conduct a complete audit to ascertain the extent of the problem.

25. Hedges now believes that Defendants' advice was incorrect; that had Bittinger and NB properly advised him to self-report to Medicare at the time of the audit, he may have been responsible for an approximately $150,000.00 reimbursement which he would have paid. However, since the Defendants failed to advise Hedges to "self-report" the up-charging, Hedges has now expended over $250,000.00 in legal fees, has exposed himself to a potential $5,000,000.00 damage/penalty and is potentially liable criminally.

26. The negligence of the Defendants has proximately injured Hedges as set forth above.

## COUNT II
### Legal Malpractice/Breach of Confidential Information/Conflict of Interest

27. Plaintiff incorporates all paragraphs of this Complaint as is fully set forth under this count and further alleges:

28. At a time when Hedges believed that he was still being represented by Defendants, Defendants undertook representation of Pitts. As a result of obtaining information from Hedges in the context of the confidential attorney-client relationship the two shared, Defendants are now alleging, on behalf of, and in an attempt to exonerate Pitts with Medicare, that Hedges was knowingly and fraudulently up-charging Medicare, and that Pitts had no knowledge of Hedges' actions.

29. Besides the fact that Hedges denies any knowledge of knowingly and willfully up-charging, or that he would not have self-reported to Medicare and paid the proper reimbursement at the time had he been properly so advised by Bittinger/NB, Defendants' representation of Pitts is in direct conflict of their representation of Hedges. Defendants are also utilizing information obtained in their representation of Hedges, specifically of the alleged Medicare up-charges, and utilizing that information against Hedges in an effort to exonerate Pitts in any potential Medicare investigation. Defendants' actions are a breach

SLATER & ZURZ LLP
ATTORNEYS & COUNSELORS AT LAW
ONE CASCADE PLAZA
SUITE 2210
AKRON, OHIO 44308-1135
TELEPHONE (330) 762-0700
FAX (330) 762-3923

of the attorney-client privilege and their representation of Pitts is a conflict of interest.

30. As a result of the above conduct, Hedges has suffered damages proximately caused by the Defendants as set forth above.

## COUNT III
### *Defamation*

1. Plaintiff incorporates all paragraphs of this Complaint as is fully set forth under this count and further alleges:

2. Bittinger/NB's allegation that Hedges was knowingly defrauding Medicare is false and outrageous. It is only because of Bittinger and NB's own malpractice that Hedges did not self-report to Medicare. Bittinger and NB have defamed Hedges.

3. Besides making the statement to the carrier that Hedges was knowingly defrauding Medicare, Bittinger/NB almost certainly made the same allegation to the Medicare inspectors investigating Pitts, thus triggering Medicare's investigation of Hedges.

4. These allegations have caused Hedges to lose business, and may prevent Hedges from representing Medicare insured clients in the future.

5. As a result of the above conduct, Hedges has suffered compensatory damages proximately caused by the Defendants as set forth above. Additionally, the outrageous conduct of Defendants in defaming Hedges entitles Hedges to Punitive Damages.

WHEREFORE, Plaintiff demands Judgment against Defendants, individually, jointly and severely in excess of $75,000.00, plus costs, disbursements, reasonable attorney fees, punitive damages, interest and whatever other relief the Court deems just and equitable.

Respectfully submitted,

SLATER & ZURZ, LLP

/s/ Mark A. Ropchock
MARK A. ROPCHOCK #00842321
Attorney for Plaintiff
One Cascade Plaza, Suite 2210
Akron, Ohio 44308
Phone: (330)762-0700
Fax: (330)762-3923
Mropchock@slaterzurz.com

**JURY DEMAND**

Plaintiff demands a Trial by Jury.

/s/ Mark A. Ropchock
MARK A. ROPCHOCK #00842321
Attorney for Plaintiff