# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **JEFFREY G. HEDGES, D.C.,** | ) | CASE NO.1:17CV720 |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **STEPHEN D. BITTINGER, ESQ., ET. AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (ECF # 9). For the following reasons, the Court denies Defendants' Motion.

According to the Complaint, Plaintiff Jeffrey G. Hedges ("Hedges") is a chiropractor whose practice is located in Asheville, North Carolina. Hedges, through his management company AIDO, owned a multi-disciplinary medical office called Superior Healthcare Physical Medicine ("Superior"). Infinite Wellness, an unrelated company, supplied billing services to Superior relating to its Medicare and Major Medical Insurance billing. In January 2015, Hedges became concerned that Infinite's billing practices did not conform to requirements of Medicare and retained Defendants to ensure the billing practices complied

with the law. Defendants hired Accucode Consulting LLC to audit a sample of Superior's patient files, and having uncovered some irregular billing, recommended that Superior correct it practices going forward. Defendants advised Plaintiff that he did not need to do anything to correct the past billing errors but recommended he purchase audit insurance.

In December 2015, Dr. Venus Pitts ("Pitts"), the physician under whose license Superior operated, informed Hedges that Medicare had come to the office to audit. Hedges referred Pitts to Defendants. Pitts retained Defendants, who subsequently contacted Hedges to provide defense costs. Hedges assumed the costs would be covered by the audit insurance.

Hedges learned through a copy of a coverage opinion letter from Defendants to Pitts that the audit insurance would not cover Pitts/Superior defense costs and further alleged that Hedges had been fraudulently billing under Pitts' name in order to benefit from the higher billing rate. Hedges has since learned he may be liable for the upcharges and criminal prosecution is a possibility. Hedges alleges legal malpractice and defamation claims against Defendants for their alleged improper legal advice, conflict of interest in representing Pitts while representing Hedges, and using confidential information provided them by Hedges against Hedges.

## **Standard of Review**

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Almendares v. Palmer*, 284 F.Supp. 2d 799, 802 (N.D. Ohio 2003). Therefore, as with a motion to dismiss, the Court

must test the sufficiency of the complaint and determine whether "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.'" *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007), *quoting Bell Atlantic Corp. v. Twombly*, U.S., 127 S.Ct. 1955, 1974 (2007). Claims alleged in the complaint must be "plausible," not merely "conceivable." *Id*. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). A Rule 12(c) motion "is granted when ***no material issue of fact*** exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added). A written instrument attached to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P. 10(c). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

### **Defendants' Motion for Judgment on the Pleadings**

According to Defendants, they are entitled to judgment as a matter of law because Plaintiff's legal malpractice claims are outside the statute of limitations period. Furthermore, Defendants claim Plaintiff was not a client of Defendants and therefore, lacks standing to assert a legal malpractice claim against them. Lastly, Defendants contend Plaintiff's own misconduct caused his injuries and under the equitable doctrine of unclean hands he cannot prevail on his claims against Defendants.

Plaintiff opposes the motion on the grounds that Defendants rely on evidence outside the pleadings, rendering their Motion improper under Fed. R. Civ. Pro. 12(c).  Furthermore, Plaintiff contends his status as a client of Defendants is a question of fact.  As evidence, Plaintiff attaches an Engagement Agreement to his Complaint wherein the letter expressly indicates Plaintiff is a client of Defendants.

Plaintiff further alleges that the statutory limitation period did not begin to run until Plaintiff became aware that Defendants' legal advice was improper.  He only learned that the advice was improper when he was investigated by the United States Attorneys office in January of 2017.

Lastly, Plaintiff argues that the issue of unclean hands is by nature a fact question improper for determination on a Rule 12(c) motion.

## Statute of Limitation

Having reviewed the pleadings, motion, opposition and reply, along with the various exhibits, the Court finds genuine issues of fact preclude judgment for Defendants.   Under Ohio law, "a cause of action for legal malpractice accrues, and the one-year statute of limitations begins to run, on the later of two dates: (1) 'when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney'; or (2) 'when the attorney-client relationship for that particular transaction or undertaking terminates.'" *Antioch Litig. Tr. v. McDermott Will & Emery LLP,* 738 F. Supp. 2d 758, 775–76 (S.D. Ohio 2010) quoting *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 57–58, 538 N.E.2d 398 (1989).  Defendants' statute of limitation argument

depends on a determination of when the triggering act occurred. According to Defendants, the alleged improper legal advice was given in May of 2015 and Defendant Bittinger began representing Dr. Pitts in December 2015. Thus, both acts occurred more than one year prior to Plaintiff's filing of his Complaint in April of 2017.

According to Plaintiff, the cognizable event triggering his limitation period was the U.S. Attorney investigation in January 2017 wherein Plaintiff discovered he may be liable. Courts have defined a cognizable event under Ohio law as "an event that is sufficient to alert a reasonable person that his attorney has committed an improper act in course of legal representation." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 540 F. Supp. 2d 900, 906 (S.D. Ohio 2007), quoting *Ladanyi v. Crookes & Hanson Ltd.,* 2007 WL 416926, *3 (Ohio App. 8 Dist.) (*See also Spencer v. McGill,* 87 Ohio App.3d 267, 278, 622 N.E.2d 7 (1993); and *Hickle v. Malone,* 110 Ohio App.3d 703, 707, 675 N.E.2d 48 (1996)). The Sixth Circuit has determined a cognizable event occurs when a client perceives "mistakes in lawyering." *Omlin v. Kaufman & Cumberland Company, L.P.A.,* 8 Fed.Appx. 477 (6th Cir. 2001)."

Here, the Court must construe the allegations in the Complaint as true. "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 582 (6th Cir.2007) At paragraph 18 of his Complaint, Plaintiff alleges:

> In January, 2017, one of Hedges' colleagues was interviewed by the Office of the Inspector General concerning the excessive Medicare reimbursements first identified by Accucode's audits, and for which Bittinger and NB advised Hedges to "do nothing". This interview resulted in Hedges realizing that he

5

might be responsible for past Medicare up-charges about which Bittinger and NB specifically advised him to "do nothing."

Thus, his Complaint, construed liberally in his favor and taken as true, alleges he learned in January of 2017 that he may be liable for the Medicare up-charges, contrary to the advice of counsel. Because the cognizable event is a disputed issue of fact, judgment at this stage of the proceedings is improper.

Count II of Plaintiff's Complaint alleges legal malpractice by Defendants for a conflict of interest and breach of confidential information. According to Plaintiff's Complaint, Defendants undertook representing Pitts when they still represented Plaintiff. Defendants used information, confidentially obtained in their representation of Plaintiff, to accuse Plaintiff of up-charging Medicare in an attempt to exonerate their client Pitts. In so representing Pitts, Plaintiff alleges Defendants violated the attorney-client relationship with Plaintiff and created a clear conflict of interest.

Defendants argue Plaintiff's legal malpractice claims based on conflict of interest and breach of confidential information are also time barred under the one-year limitation period. The Complaint alleges Plaintiff learned of the conflict of interest in December 2015 when Pitts retained Defendants to defend her in a Medicare audit. Plaintiff contends that while he knew of the dual representation he did not know of its adverse affect on him until January of 2017 when he discovered he may be civilly and criminally liable. Prior to that time, he did not have reason to believe he was subject to additional penalties. In fact, the Complaint alleges Plaintiff referred Pitts to Defendants, believing they "had provided him sound advice...". "The Ohio Supreme Court has also held that a "cognizable event" is an event that imposes upon a plaintiff a duty to determine if his injury was caused by malpractice, and to

6

identify the tortfeasors." *Wilkey v. Hull*, 598 F. Supp. 2d 823, 835 (S.D. Ohio 2009), aff'd, 366 F. App'x 634 (6th Cir. 2010) *Flowers v. Walker,* 63 Ohio St.3d 546, 589 N.E.2d 1284 (1992).   At this stage of the proceedings, the Court cannot find as a matter of law that Defendants dual representation of Plaintiff and Pitts should have placed a duty on Plaintiff to identify tortfeasors, particularly when according to the Complaint, Plaintiff had no reason to suspect such a relationship was adverse to his interests.  Moreover, no injury to Plaintiff had occurred in December 2015.

Defendants are also not entitled to judgment as a matter of law on Plaintiff's legal malpractice claim for breach of confidential information as the Complaint alleges he only learned of such breach after June of 2016, within the one year limitation period.

**<u>Standing</u>**

Defendants further contend that Plaintiff lacks standing to assert his legal malpractice claims because he was never Defendants' client.  However, this is also a disputed issue of fact.  Plaintiff's Complaint attaches as an exhibit an engagement agreement between Plaintiff and Defendants wherein it reads in pertinent part:  "Under this Agreement we will represent you individually and not your practice(s)..."  It is addressed to Plaintiff and is signed by Plaintiff and Defendant Stephen Bittinger.   This agreement supports the allegation in the Complaint which alleges Plaintiff was a client of Defendants.  (See Complaint para. 7).

Defendants attach to their Answer an email from Plaintiff in response to an invoice from Defendants wherein Plaintiff writes: "you must have a mistake.  I'm not a client of Steve Bittinger and I don't own a (sp) office."  This calls into question not only whether Plaintiff was a client of Defendants, but also, if he were a client, when the attorney-client relationship

7

ended. "The point at which the attorney-client relationship is terminated is a factual question to be resolved by the trier of fact." *Nat'l Union Fire Ins. Co.,* 540 F. Supp. 2d. at 909. Because the evidence conflicts on the central question of Plaintiff's status as a client of Defendants, the Court holds this genuine issue of fact precludes judgment for Defendants.

### **Unclean Hands**

Lastly, Defendants assert that Plaintiff's "unclean hands" render any claim he has against Defendants inequitable because of Plaintiff's alleged fraudulent Medicare billing. "The doctrine of unclean hands is 'a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Scooter Store, Inc. v. SpinLife.com, LLC,* 777 F. Supp. 2d 1102, 1113 (S.D. Ohio 2011) quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation" of the unclean hands doctrine. *Id.* at 815, 65 S.Ct. 993. The Sixth Circuit has stated "(f)raud or unclean hands are not to be lightly inferred. They must be established by 'clear, unequivocal and convincing' evidence." *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.,* 562 F.2d 365, 371 (6th Cir.1977).

According to Defendants, Plaintiff's improper billing practices renders his claims inequitable under the unclean hands doctrine as Plaintiff's own acts have subjected him to potential civil and criminal liability. He cannot cast blame for his predicament now on Defendants.

In light of the evidentiary burden placed on the party asserting unclean hands, the Court, on a Motion for Judgment on the Pleadings, holds Defendants cannot meet such the high evidentiary burden placed on it at this stage of the proceedings when no discovery has been conducted and therefore, denies Defendants' Motion.

Therefore, for the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is denied.

IT IS SO ORDERED.

                                              s/ Christopher A. Boyko
                                              CHRISTOPHER A. BOYKO
                                              United States District Judge

Dated: October 12, 2017